## APPEAL OF MARTIN ZINN.

Docket No. 3444. Submitted July 31, 1925. Decided February 23, 1926.

Upon the evidence, *held*, that the taxpayer made a *bona fide* gift to his wife of certain stock and that he derived no taxable gain from the subsequent sale of said stock by his wife.

*Hugh Satterlee* and *Roy M. O'Hara, Esqs.*, for the taxpayer.
*Willis D. Nance* and *E. C. Lake, Esqs.*, for the Commissioner.

Before IVINS and GREEN.

This appeal is from the determination of a. deficiency in income tax for the year 1919 in the amount of $611,443.80, and arises from a transaction which the Commissioner contends constituted a sale of stock by the taxpayer at a profit.

FINDINGS OF FACT.

The taxpayer is an individual residing in New York City. During the early part of 1919, and for over 25 years prior thereto, he was engaged with Arthur Zinn and Frederick H. Hoffmann in the manufacture and sale of Gem safety razors and razor blades. The taxpayer and Arthur Zinn, his brother, were also during the same period engaged in the metal novelty business, under the name of Simon Zinn, Inc., in which the taxpayer has never had an interest. Throughout the taxpayer's connection with the Gem safety razor business it was conducted under the active management of Hoffmann, said Arthur Zinn and the taxpayer devoting their major attention to their metal novelty business.

For some years the Gem safety razor business was carried on by Arthur Zinn, Hoffmann, and the taxpayer as a partnership. On or about January 1, 1913, a corporation was organized, under the name of Gem Cutlery Co., to sell the Gem safety razor products, with a paid-in capital stock of $10,000. Later, and in or about the year 1915, the taxpayer and his associates caused to be organized the Superior Saftey Blade Manufacturing Co., Inc., with a capital stock of $2,000, which carried on the manufacture of safety razor blades for the Gem safety razor and manufactured some of the other parts. Thereafter, and until the taxable year here in question, the business was carried on through the medium of these three organizations.

On or about January 8, 1919, the Gem Safety Razor Corporation was incorporated under the laws of New York, with an authorized capital stock of $250,000, but no property was at that time transferred to that corporation and none of its stock was issued.

Certain persons, who subsequently formed the American Safety Razor Corporation, were desirous of acquiring the Gem safety razor business, and on July 22, 1919, a conference was called at which there were present the taxpayer, Arthur Zinn, Hoffmann, one Stern, counsel for the taxpayer and his associates, one Dammann, counsel for the proposed American Safety Razor Corporation, one Bennett, also of counsel for those interests, Kaufmann, who became the president of that corporation, and Storm, the promoter of the plan. At that conference, Kaufmann and his associates offered to pay $4,000,000 for the Gem safety razor business. It developed however, upon discussion of counsel, that a very heavy tax, amounting for the three individuals to approximately $2,000,000, would result from such a sale, and the taxpayer and his brother immediately stated that they would not make a sale which would produce such a net price, and in that decision Hoffmann acquiesced. Thereupon, one of the conferees suggested that if the taxpayer and

his associates made a gift of their interests in the business to their wives and their wives consummated the transaction, and the gifts were made in absolute good faith, and the taxpayer and his associates nevei received the proceeds of the sale, no tax would result, except possibly upon any increment of value between the value at the date of the gift and the sale price.

Hoffmann, who managed the business, had been in ill health for a considerable period of time and was desirous of terminating his association with the business and retiring, and on the 24th of July he advised the taxpayer of his intention to quit the business on this account and at the same time he stated that his brother, who was office manager of the Gem safety razor business, proposed to quit and go to Florida.

On July 23, 1919, the taxpayer and his associates caused the authorized capital stock of the Gem Safety Razor Corporation to be increased to $1,100,000.

On July 24, Hoffmann, upon arriving at the office, announced to the taxpayer his intention of giving his interest in the business to his wife and retiring. The taxpayer protested that he did not want Hoffmann to retire and urged him to take a long vacation to recover his health and to go on with the business, but he was unable to alter the latter's decision. On July 25, the taxpayer called his wife on the telephone and discussed the situation with her, and she asked him to bring Hoffmann to their summer home on Lake Placid, where she then was. The taxpayer left that night with Hoffmann for the Zinn home at Lake Placid, arriving there early Saturday morning, July 26. In the meantime Arthur Zinn had departed for his summer home at Bethlehem, in the White Mountains.

On July 26, the taxpayer and Hoffmann were met at the station by Mrs. Zinn and the conversation immediately was centered upon the proposed retirement of Hoffmann. Mrs. Zinn added her urgings to those of her husband that Hoffmann remain in the business. These conversations continued through the greater part of the 26th. In the evening, finding that Hoffmann would not alter his determination, the taxpayer announced his intention also to turn his interest in the Gem safety razor business over to his wife, and thereupon called Arthur Zinn over the telephone at his home and communicated his determination to him. Arthur Zinn at that time stated that he also would make a gift of his interest in the business to his wife.

On Sunday night, July 27, the taxpayer and Hoffmann left for New York, arriving Monday morning, July 28. On that day they and Arthur Zinn subscribed for, and there was issued to them, $975,000 par value of the stock of the Gem Safety Razor Corporation, for which they paid cash. On July 29, $125,000 par value of stock was issued to the taxpayer and his associates for the transfer to the Gem

Safety Razor Corporation of the stock of the Gem Cutlery Co. at a valuation of $15,000; the stock of the Superior Safety Blade Manufacturing Co. at a valuation of $45,000; and for machinery belonging to the partnership at a valuation of $65,000. Immediately thereafter the Gem Safety Razor Corporation purchased for cash from the taxpayer and his associates the good will of the business, the sole remaining asset of the partnership, for $975,000.

Thereafter, on July 28, the taxpayer and his associates had instructed Stern to take all necessary legal steps to carry into effect the transfer of their interests in the business to their respective wives.

On July 29, the taxpayer indorsed and delivered to his wife all the stock certificates in the Gem Safety Razor Corporation theretofore issued to him, reserving one share to qualify himself as a director. Each of his associates pursued the same course and thereupon the certificates theretofore issued to each of them and so indorsed and delivered, were turned back and new certificates of .stock were issued to the respective wives. At the same time each of the three executed a separate assignment of his stock to his wife. The certificates so indorsed by the taxpayer and the new certificates issued in lieu thereof were delivered to the taxpayer's wife and were by her indorsed and delivered to Stern.

On August 5, Mrs. Hoffmann, Mrs. Tessie Zinn, wife of the taxpayer, and Mrs. Florence Zinn, wife of Arthur, entered into an agreement with the American Safety Razor Corporation for the sale of their stock and interest in the Gem Safety Razor Corporation for a consideration of $4,000,000, $250,000 to be paid upon the execution of the agreement and $3,750,000 to be paid at a later date, in default of which payment the initial $250,000 was to be forfeited. On August 12, payment of the first $250,000 was made and delivered to Mrs. Hoffmann, who deposited the same in her bank for the account of herself and the associate wives and with these funds purchased United States Treasury certificates. On or about September 22, 1919, the American Safety Razor Corporation made a final payment of $3,750,000 to Stern, who delivered $1,250,000 to each of the three wives, including the wife of the taxpayer, who received it and has ever since retained it or the investments or reinvestments into which such payments were converted. At the same time the American Safety Razor Corporation entered into separate agreements with Emma Hoffmann, Tessie Zinn, and Florence Zinn, whereby it agreed to indemnify each of them " upon being notified in writing   *   *   * within six years hereof of a final decision or decisions of the United States Treasury Department levying and assessing   *   *   * a tax in excess of $133,333.33   *   *   * up to $533,333.33." At the same time the taxpayer and his associates entered into an agreement with the American Safety Razor Corporation not to engage in the

safety razor business for a period of 10 years from and after the date of that agreement.

From time to time up to the present time said Tessie Zinn has invested and reinvested for her own account the $1,333,333 which she received from the American Safety Razor Corporation in accordance with the terms of the contract of August 5, 1919, together with the income derived from the securities and stocks in which said sum has been invested. Said Tessie Zinn still holds the avails and fruits of said $1,333,333, without impairment or diminution, except for depreciation in the value of her investments and except for such expenditures as she has made for her personal benefit and, since 1920, for household expenses.

After the gift to said Tessie Zinn by the taxpayer on July 29, 1919, of his stock in the Gem Safety Razor Corporation, the taxpayer has not exercised any dominion or control over said stock, or over the proceeds of the sale of said stock, or over any income therefrom. On the contrary, said Tessie Zinn, after July 29, 1919, and prior to the sale of said stock to the American Safety Razor Corporation, exercised complete dominion and control over such stock, and since such sale has at all times exercised complete dominion and control over the proceeds of the sale of such stock to the American Safety Razor Corporation and of all investments thereof and income therefrom.

Throughout the year 1919 the taxpayer owned and possessed property and assets of a market value of about $850,000, exclusive of his stock in the Gem Safety Razor Corporation and his prior interest in the Gem safety razor business.

The Commissioner, in the audit of the taxpayer's return, and as a basis for the deficiency here in issue, asserted that the taxpayer derived a profit from the sale of the stock of the Gem Safety Razor Corporation to the American Safety Razor Corporation in the amount of $966,666.67, being one-third of the difference between $1,100,000, the par value of the stock of the Gem Safety Razor Corporation transferred by the taxpayer to his wife, and by her to the American Safety Razor Corporation, and $4,000,000, the price received therefor.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

### OPINION.

GREEN: This appeal was presented at the same time as the *Appeal of Frederick H. Hoffmann*, decided this day, 3 B. T. A. 964. What we there said is in the main applicable here. The facts in the two appeals are very similar and the issue is identical.

This appeal received the same careful consideration by the entire Board as did the *Hoffmann* appeal, and we find therein nothing to warrant us in holding that the transfer of the stock by this taxpayer to his wife was not a *bona fide* gift, vesting in her unconditionally every right of title and ownership which the taxpayer had. It was not a gift of the proceeds of the sale. No contract was made by the taxpayer and his associates for the sale of the stock. The sale was made pursuant to a contract between the wives and the American Safety Razor Corporation. Upon the issue presented we must find for the taxpayer.

On reference to the Board, ARUNDELL did not participate.

KORNER, MARQUETTE, SMITH, and TRUSSELL dissent.